COURT OF APPEALS
DECISION
DATED AND FILED

April 18, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1053-CR**

Cir. Ct. No. 2018CF1200

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DONNAVAN KENNETH MITCHELL,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Brown County:  JOHN ZAKOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Donnavan Mitchell appeals a judgment of conviction for endangering safety by use of a dangerous weapon and an order

denying his postconviction motion to withdraw his plea. Mitchell argues that his no-contest plea was involuntary because of several coercive factors. We conclude that the circuit court did not erroneously exercise its discretion in denying Mitchell's postconviction motion for plea withdrawal, and we affirm.

## BACKGROUND

¶2 Mitchell was charged on August 23, 2018, with first-degree recklessly endangering safety; two counts of possession of a firearm by an out-of-state felon; possession of THC, as a party to a crime; and possession of drug paraphernalia, as a party to a crime. The charges stemmed from an incident on August 22 at which Mitchell fired a handgun during a dispute with individuals that Mitchell claimed were robbing him. While executing a search warrant of Mitchell's home and vehicle, police found a black handgun, a twelve-gauge shotgun, marijuana, and drug paraphernalia.

¶3 As the underlying basis for the firearms charges, the State relied on the National Crime Information Center (NCIC) and the Interstate Identification Index (Triple I) records,[1] which showed that Mitchell had been convicted in Illinois of possession of a stolen firearm, a Class 2 felony under Illinois law. The State determined that that conviction was the Wisconsin equivalent of a conviction under WIS. STAT. § 943.34(1)(bm) (2021-22),[2] receiving a stolen firearm, a Class

---

[1] "NCIC is 'an electronic clearinghouse of crime data that can be tapped into by virtually every criminal justice agency nationwide, 24 hours a day, 365 days a year.'" *State v. Subdiaz-Osorio*, 2014 WI 87, ¶21 n.10, 357 Wis. 2d 41, 849 N.W.2d 748 (citation omitted). Similarly, Triple I is the national criminal history record system. *Culp v. Madigan*, 270 F. Supp. 3d 1038, 1049 n.6 (C.D. Ill. 2017), *aff'd sub nom. Culp v. Raoul*, 921 F.3d 646 (7th Cir. 2019).

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

H felony. Thereafter, a court commissioner set cash bail at $50,000, "based on the allegations" in the complaint, as well as Mitchell's prior criminal history.

¶4 Mitchell, with his first attorney, appeared in person at the preliminary hearing. The State requested to start the hearing that day, but that the circuit court continue the balance of the hearing to another date to allow the State to call another witness. Mitchell's attorney objected, but the commissioner allowed the State to proceed as requested. The State's first witness did not testify as to Mitchell's felony conviction, and Mitchell's attorney objected to binding Mitchell over for trial. The commissioner again stated she was allowing the State to present another witness, and a second hearing was scheduled for October 8, 2018.

¶5 At the October 8 preliminary hearing, the State sought to admit an "extradition file" from Illinois, which included an "order of commitment and sentence to the Illinois Department of Corrections, signed by [a judge] in Cook County." Defense counsel objected, stating that she "looked at that paperwork and it doesn't match up with what the State is saying [Mitchell] was convicted of." The court commissioner responded, stating that the documents "don't … specifically classif[y] the conviction." The commissioner allowed the State to print the specific Illinois criminal code section that Mitchell was convicted of violating, which showed that the charge was indeed a felony in Illinois. The commissioner determined that there was probable cause, bound Mitchell over for trial on the felony counts, and scheduled a date for the arraignment.[3]

---

[3] The Honorable John P. Zakowski presided over the arraignment and remained the judge of record for the remainder of the case.

3

¶6      Over the course of the next fourteen months—due to, among other reasons, conflicts of interest, counsel health issues, and an OLR complaint—Mitchell was represented by five different attorneys.[4]  Prior to the appointment of his fifth attorney, Mitchell made several bail modification requests to reduce the cash bail amount.  Eventually, Mitchell's bail was reduced to $25,000, but Mitchell remained incarcerated.

¶7      On December 20, 2019, Mitchell appeared in person with his final attorney—Attorney Andrew Mongin—who stated that after reviewing the discovery, he determined that there were issues with the two charges for possession of a firearm by an out-of-state felon.  Specifically, Mongin stated that he had "some questions or issues about the out-of-state conviction that supposedly happened in Illinois, that if you were to take the elements of that offense from Illinois it would not be a crime in Wisconsin.  That's where I'm going with this."  The court scheduled a hearing on a motion to dismiss the two counts, and it set a trial for March 4, 2020.

¶8      Mitchell appeared in person with Mongin at the motion hearing.  Mongin informed the circuit court that they were not prepared because they needed assistance in getting records from Illinois.  At Mongin's request, the court signed an order permitting Mitchell to receive records from Illinois.  At a January 29, 2020 hearing, Mitchell appeared in person with Mongin.  The parties requested more time to obtain the Illinois records.  Additionally, Mongin informed the court that the defense planned to file a suppression motion regarding a

_____

[4] At one point, the State Public Defender's Office advised the circuit court that it had unsuccessfully made over 200 attempts to locate counsel for Mitchell.  Additionally, the court on two separate occasions appointed two attorneys to represent Mitchell, but both declined.

neighbor's identification of Mitchell as the shooter. Therefore, the parties scheduled a motion hearing for February 12, 2020, to address both the motion to dismiss and the suppression motion.

¶9 On the date of the motion hearing, Mitchell again appeared in person with Mongin. However, Mongin informed the circuit court that the parties had come to an agreement on a resolution to the case "and what we would like to do is … take the pretrial and trial date off the calendar and arrange for a plea and sentencing hearing." The plea deal required Mitchell to plead no-contest to an amended charge of endangering safety by use of a dangerous weapon, contrary to WIS. STAT. § 941.20(2)(a), a Class G felony. In return, the State agreed to dismiss and read in the two drug-related charges. The State also informed Mongin, via email, that it would "move to dismiss outright" the two counts of possession of a firearm by an out-of-state felon.

¶10 A plea and sentencing hearing occurred two days later on February 14, 2020. Mitchell appeared in person with Mongin. Mitchell entered a no-contest plea to the amended charge of endangering safety by use of a dangerous weapon. Mongin submitted a plea questionnaire and waiver of rights form, which was signed by Mitchell, although the "constitutional rights [were] not checked off." Attached to that form was the State's email regarding the two counts of possession of a firearm by an out-of-state felon. The circuit court conducted a plea colloquy with Mitchell, confirming, as relevant here, that Mongin reviewed the constitutional rights with Mitchell, that Mitchell understood the charge to which he was pleading, and that Mitchell was not threatened or promised anything in return for taking the plea deal or entering his plea. Ultimately, the court found that Mitchell entered his plea freely, voluntarily and intelligently, accepted his plea, and found Mitchell guilty.

¶11    Regarding the outright dismissal of the two counts of possession of a firearm by an out-of-state felon, after the circuit court accepted Mitchell's plea, the State informed the court:

> Basically, we obtained the sufficient paperwork from Cook County, Illinois, Judgment of Conviction there, which were inconsistent, quite frankly, with the records of NCIC and Triple I, which at least from the State's perspective we've relied [on] in the past and found it to be reliable and that formed the basis for the charges to Counts Two and Three. We've since learned that was inconsistent with the actual Judgment of Conviction in Cook County.
>
> ….
>
> So there isn't a basis, in the State's opinion, for Counts Two and Three. There was a conviction in Cook County but it was for an offense that appears analogous to carrying a concealed weapon. So it would be a misdemeanor offense here.

The court withheld sentence, placed Mitchell on three years' probation, and ordered one year of conditional jail with time served.

¶12    Mitchell filed a postconviction motion to withdraw his no-contest plea, arguing that his plea was entered involuntarily. After a hearing at which Mitchell was the only witness to testify, the circuit court denied the motion in a written decision. Mitchell now appeals.

## DISCUSSION

¶13    A circuit court has the discretion to determine whether a plea should be withdrawn, and a plea will not be disturbed unless the defendant "carries the heavy burden of establishing, by clear and convincing evidence, that the court should permit the defendant to withdraw the plea to correct a 'manifest injustice.'" *State v. Cain*, 2012 WI 68, ¶¶20, 25, 342 Wis. 2d 1, 816 N.W.2d 177 (citations

6

omitted). "One way the defendant can show manifest injustice is to prove that his [or her] plea was not entered knowingly, intelligently, and voluntarily." *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482.

> A plea not entered knowingly, intelligently, and voluntarily violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right. Whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact that is reviewed independently. "In making this determination, this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous."

*Id.*, ¶25 (citations omitted).

## I. Mitchell's cited coercive factors and applicable legal standards for plea withdrawal

¶14 On appeal, Mitchell argues that a combination of four "coercive systemic factors" establishes that he did not enter his no-contest plea knowingly, intelligently, and voluntarily: (1) "an unattainable bond and extreme length of pretrial detention [that] exhausted his capacity to manage his case"; (2) "representation by five different attorneys and associated communication issues [that] furthered his exhaustion, added delays, and instilled confusion"; (3) "confusion, hastiness, and counsel coercion [that] overwhelmed the plea bargaining"; and (4) the fact that the State incorrectly charged him with two counts of possession of a firearm by an out-of-state felon, which exacerbated issues with the plea.[5]

---

[5] We note that Mitchell does not allege that any of his cited coercive factors were unlawful. For example, he does not contend that his cash bail was based on unlawful considerations under WIS. STAT. § 969.01(4). Nor does Mitchell argue that there were deficiencies in the circuit court's plea colloquy. *See State v. Clark*, 2022 WI 21, ¶14, 401 Wis. 2d 344, 972 N.W.2d 533 (explaining different standards for plea withdrawal).

7

¶15 Mitchell's arguments implicate the ***Nelson***/***Bentley***[6] line of cases, which apply "when [a] defendant alleges that some factor[s] extrinsic to the plea colloquy, like … coercion, render[] a plea infirm." *See **State v. Howell***, 2007 WI 75, ¶74, 301 Wis. 2d 350, 734 N.W.2d 48. A plea is legally coerced "[w]hen the defendant is not given a fair or reasonable alternative to choose from." ***Rahhal v. State***, 52 Wis. 2d 144, 152, 187 N.W.2d 800 (1971). Yet, "[t]he fact that a defendant must make a choice between two reasonable alternatives and take the consequences is not coercive of the choice finally made. The distinction between a motivation which induces and a force which compels the human mind to act must always be kept in focus." ***Id.*** at 151-52. As we have previously stated, "many guilty pleas have some element of compulsion but this is not to say that they are necessarily involuntary." ***State v. Goyette***, 2006 WI App 178, ¶30, 296 Wis. 2d 359, 722 N.W.2d 731 (citation omitted). Wisconsin courts also recognize that "self-imposed coercive" elements do not render a plea involuntary. ***Id.***, ¶¶30-31.

## II. Application of Mitchell's cited coercive factors

¶16 Mitchell first argues that he was coerced to enter his plea because his unattainable bond and extreme length of pretrial detention exhausted his capacity to manage his case. Relatedly, representation by five different attorneys furthered his exhaustion and added to delays in bringing the case to trial. We disagree, and conclude that at the time he entered into the plea deal, Mitchell had "a fair or reasonable alternative to choose from." *See **Rahhal***, 52 Wis. 2d at 152. To the

---

[6] *See **Nelson v. State***, 54 Wis. 2d 489, 195 N.W.2d 629 (1972); ***State v. Bentley***, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

extent Mitchell experienced any coercion to accept the plea deal, that coercion was self-imposed. *See Goyette*, 296 Wis. 2d 359, ¶¶30-31.

¶17 We have previously held a plea may have been the result of coercion when a defendant had reason to believe that his or her pretrial detention would be significantly extended if he or she did not accept a plea deal. *See State v. Basley*, 2006 WI App 253, ¶9, 298 Wis. 2d 232, 726 N.W.2d 671. In *Basley*, the defendant filed a motion for plea withdrawal after his attorney allegedly "threatened to withdraw unless" the defendant accepted a plea agreement and allegedly told the defendant that "it would likely take up to a year before a new attorney would be prepared to take the case to trial." *Id.*, ¶6. The defendant argued that under these circumstances, his "'ability to make a decision' was overcome, and he 'involuntarily pled no contest.'" *Id.*, ¶7. The circuit court denied the motion without conducting an evidentiary hearing. *Id.*, ¶3.

¶18 On appeal, we concluded that Basley's motion entitled him to an evidentiary hearing because the facts alleged in the motion, if true, would entitle him to withdraw his plea. *Id.*, ¶9. Specifically, we stated that if the defendant's counsel actually "told him that, if [the defendant] would not agree to the State's proffered plea bargain, counsel would withdraw from representation, thereby forcing a potentially lengthy delay of [the defendant's] trial, [the defendant's] plea was tendered under the duress of his attorney's coercive conduct, rendering his plea involuntary." *Id.*

¶19 Unlike in *Basley*, where the defendant had reason to believe that his pretrial detention could be extended significantly as a result of his attorney withdrawal if he did not accept a plea deal, neither Mitchell's high cash bail, the length of his pretrial detention, or prior representation by a number of attorneys

provided a risk that Mitchell's pretrial detention would be extended if he did not enter a plea on February 14, 2020. On February 12, 2020, the date Mongin informed the circuit court that the parties had reached a plea agreement, Mitchell had a definite trial date of March 4, 2020. Therefore, if Mitchell chose not to accept the plea offer, he needed to wait less than a month for his trial. The delay of less than a month was a fair and reasonable alternative to entering a plea on February 14. His decision not to wait was therefore self-imposed. *See Goyette*, 296 Wis. 2d 359, ¶¶30-31.

¶20 Furthermore, Mitchell's claim that general exhaustion unlawfully coerced him is without merit as that factor is self-imposed. For example, in *Drake v. State*, 45 Wis. 2d 226, 233, 172 N.W.2d 664 (1969), our supreme court held that a defendant's decision to plead guilty to avoid implicating his wife in a crime was "a self-imposed 'coercive element,' which d[id] not weaken the" voluntariness of the plea. Similarly, in *Craker v. State*, 66 Wis. 2d 222, 225-26, 229, 223 N.W.2d 872 (1974), the court held that a defendant's decision to plead guilty to first-degree intentional homicide was voluntary, despite "the effect that the defendant's family and friends and certain members of the clergy had" a hand in getting him to plead guilty. The court stated that "[t]he defendant's religious beliefs regarding the merits of confessing one's wrongdoing and his desire to mollify his family or give in to their desires are 'self[-]imposed coercive elements' and do not vitiate the voluntary nature of the defendant's guilty plea." *Id.* at 229. Like the defendants in both *Drake* and *Craker*, who entered into plea deals due to their own personal desires, Mitchell's decision to enter into a plea deal due to purported exhaustion with the case was self-imposed.

¶21 Mitchell does, however, identify some non-self-imposed coercive factors that he alleges existed at the time he entered his no-contest plea on

February 14, 2020. Specifically, he argues that communication issues with Mongin and the general "hastiness" surrounding the plea deal confused Mitchell's understanding of the plea. Mitchell also contends that the plea deal was tainted by "counsel coercion." These factors, if true, can create an involuntary plea. *See State v. Shanks*, 152 Wis. 2d 284, 290-91, 448 N.W.2d 264 (Ct. App. 1989) (stating that "[h]asty entry" of a plea or "confusion on the defendant's part" can be grounds for plea withdrawal under the lower "fair and just reasons" standard); *Basley*, 298 Wis. 2d 232, ¶9 (stating that counsel coercion can render a plea involuntary). Mitchell fails, however, to show by clear and convincing evidence that any of these three factors actually existed in his case.

¶22 First, Mitchell contends that he did not completely understand the plea deal due to the proceeding's haste and his confusion. Mitchell testified at the postconviction hearing that he was presented with the plea offer for the first time at the February 12, 2020 hearing and spoke with Mongin at the defense table for roughly five minutes. Mitchell also testified that Mongin did not inform him what was happening with the suppression motion related to his identification, and that Mitchell was "kind of left … in the wind with, you know, knowing what was going on" and that Mitchell felt that he "had to go along with what, you know, what [Mongin] wanted to do." Similarly, Mitchell testified that he did not know the State planned to dismiss the two counts of possession of a firearm by an out-of-state felon regardless of whether he accepted the plea deal or not, which he claims is evidenced by the State's filing of an amended Information on the day of the plea and sentencing that still included the firearms charges. According to Mitchell, he would have not entered a plea if he understood that there was only going to be one felony charge and not three. After questioning by the circuit court, Mitchell stated that he did not want to question what was going on because

"I didn't want to have this problem when I'm having a confliction with my lawyer again, [where] he backs out and then I'm left in the wind" without an attorney.

¶23     Despite Mitchell's purported confusion, the circuit court found in its written decision that Mitchell

> was more cognizant of "what was going on" than he states. During [the] court hearing Attorney Mongin and the prosecution stated on the record the issue of the Illinois record and the possible dismissal of the possession of a firearm charges. The court found the defendant's letters to the court to be well-written and demonstrated an understanding of the court system and the case status. The court also reviewed its questions during the plea colloquy and the defendant's answers.

¶24     The circuit court's findings regarding Mitchell's understanding of what was happening at the plea hearing are not clearly erroneous. Mitchell understood the plea deal, the fact that the State was not dismissing the two counts of possession of a firearm by an out-of-state felon as part of the plea deal, and the fact that counsel would no longer seek to suppress the identification. In fact, at the postconviction hearing, Mitchell testified that the motion challenging the two counts of possession of a firearm by an out-of-state felon was not being taken up anymore "because the State was, you know, acknowledging that they made an error." This was confirmed in the State's email, which was attached to the signed plea questionnaire saying that it was dismissing outright the two counts of possession of a firearm by an out-of-state felon. Mitchell therefore knew that the State was not dismissing the two counts of possession of a firearm by an out-of-state felon as part of the plea deal but rather because the State could not prove the charges. Therefore, prior to entering his plea, Mitchell understood that he would not be prosecuted for the firearms charges if he proceeded to trial. To the extent Mitchell was confused, he was informed of the plea deal on February

12

12, 2020, and he did not enter into the no-contest plea until February 14, 2020. If Mitchell had questions for Mongin, he had ample time to raise them.

¶25 Second, there is no evidence in the record that demonstrates Mongin coerced Mitchell into accepting the plea deal. Importantly, Mongin was not called to testify at the postconviction hearing. Mitchell presents no clear and convincing evidence as to whether Mongin placed any unwarranted coercion on Mitchell to accept the plea.

¶26 We also note that the circuit court engaged in a valid plea colloquy with Mitchell at the February 14, 2020 plea and sentencing hearing. During the colloquy, Mitchell confirmed that no one made any threats or promises to induce him to sign the plea questionnaire. In its written decision denying the motion for plea withdrawal, the court found that during the plea colloquy, Mitchell "was attentive and understood all the rights he was giving up. More importantly, he never indicated any confusion about the process or offer." Again, the court's factual findings on this issue are not clearly erroneous.

¶27 Lastly, Mitchell cites the fact that the State incorrectly charged him with two counts of possession of a firearm by an out-of-state felon, which he contends exacerbated issues with his plea. Mitchell also contends that the circuit court failed to address this issue in its postconviction decision, and that the State breached a duty to Mitchell by not correcting its error earlier.

¶28 We first note that once the State obtained the records of Mitchell's prior convictions from Illinois, it asked the circuit court to dismiss outright the two

counts of possession of a firearm by an out-of-state felon.[7] We therefore agree with the State that Mitchell's argument that the State breached a duty to him is without merit. Second, we agree with the State that the circuit court did address Mitchell's argument regarding the two counts of possession of a firearm by an out-of-state felon. In its written decision denying Mitchell's postconviction motion, the court outlined Mitchell's testimony regarding the State's charging error, its purported effect on Mitchell's decision to accept the plea deal, and the State's ultimate dismissal of the two counts.

¶29    We also disagree with Mitchell that the State's charging error created a manifest injustice in this case because the erroneous charges coerced him into accepting the plea deal. As stated earlier, the circuit court found that Mitchell had a better understanding of the proceedings than he let on at the postconviction motion hearing. Furthermore, there is no evidence in the record that demonstrates Mitchell was confused because of the charging error. The error was corrected and both charges were dismissed outright prior to sentencing.[8] As such, we conclude that Mitchell has failed to show that plea withdrawal is necessary to correct a

---

[7] The circuit court first conducted the plea colloquy with Mitchell, found him guilty on count one, and then dismissed the two counts of possession of a firearm by an out-of-state felon.

[8] Mitchell also contends on appeal that the charging error led to his high cash bail. While we agree that it may have affected his bail in some way, bail was set, and later reduced, relying on, among other things, the potential penalties Mitchell faced. Even if he was originally charged with only the one felony, Mitchell was facing a Class F felony, punishable by up twelve and one-half years in prison. *See* WIS. STAT. §§ 941.30(1), 939.50(3)(f). Furthermore, as we explained, Mitchell's high cash bail did not create an involuntary plea in this case. Nor are we convinced by Mitchell's arguments that the charging error increased his confusion or "exacerbated the coercive influence of representation by multiple attorneys." We previously concluded that Mitchell's number of attorneys did not create involuntariness. Similarly, we already concluded that the circuit court's findings surrounding Mitchell's purported confusion were not clearly erroneous.

manifest injustice. Therefore, the court did not err by denying the plea withdrawal motion.

> *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.